UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN VIDUREK, KIMBERLY VIDUREK, and
JAMES VIDUREK

                                          Plaintiffs,

         - against -                                          **OPINION & ORDER**

PIM POLLEN, MARGARETH DE WIT,                                  No. 20-CV-6714 (CS)
ALESSANDRO DONETTI, N. CASSADINE, J.
MELENDEZ, SUSAN LAMASTRO, JEANETTE
WILLET, FRANK J. CHAN, CHARLES P.
RETTIG, BOBBI S. MARTIN, THE CBE GROUP,
INC., STEVE DOUGLAS, MIKE FROST and
RANDALL KAMM,

                                          Defendants.
------------------------------------------------------------x

<u>Appearances</u>:

John Vidurek
Kimberly Vidurek
James Vidurek
Hyde Park, New York
*Pro Se Plaintiffs*

Brandon H. Cowart
Assistant United States Attorney
Southern District of New York
New York, New York
*Counsel for Federal Defendants*

<u>Seibel, J.</u>

        Plaintiffs John Vidurek, Kimberly Vidurek, and James Vidurek (collectively,

"Plaintiffs"), proceeding *pro se*, bring this action against Defendants Charles P. Rettig,

Commissioner of the Internal Revenue Service ("IRS"), and IRS employees Natalie Cassadine,

Jonnie Melendez, Susan Lamastro, Jeanette Willet, Frank Chan, and Bobbi S. Martin

(collectively, the "Federal Defendants"), as well as The CBE Group, Inc. and three of its

executives, Steve Douglas, Mike Frost, and Randall Kamm (collectively, the "CBE Defendants").[1]

The Federal Defendants removed this action from New York Supreme Court, Dutchess County, on August 20, 2020, under 28 U.S.C. § 1442(a)(1).  (Doc. 1.)  Before the Court is the Federal Defendants' motion to dismiss under Rules 12(b)(1), 12(b)(5) and 12(b)(6).  (Doc. 18.)

For the following reasons, the Federal Defendants' motion is GRANTED and the claims against them are dismissed, and Plaintiffs' claims against the CBE Defendants are dismissed *sua sponte*.

## I.    __BACKGROUND__

Plaintiffs[2] filed this lawsuit in response to the IRS's efforts to assess and collect taxes. The following facts are drawn from Plaintiffs' July 21, 2020 "Action at Law" and documents attached thereto, (IC),[3] Plaintiffs' November 19, 2020 "Action at Law," (Doc. 15 ("Amended Complaint" or "AC")),[4] and Plaintiffs' opposition to the motion to dismiss, (Doc. 23 ("Ps' Opp.")).  *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18,

---

[1] Defendants Pim Pollen, Margareth de Wit and Alessandro Donetti have been dropped. *See* note 14 below.

[2] John and Kimberly are married; James is their son.  (Doc. 1-1 ("Initial Complaint" or "IC") at 9.)

[3] Because the Initial Complaint is not consecutively paginated, all citations to that document will refer to the page numbers generated by the Court's Electronic Case Filing (ECF) System, stamped at the top of each page.

[4] The Amended Complaint is dated November 16, 2020, but was not filed until November 19, 2020.

2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[5]  I accept as true the facts, although not the conclusions, in those documents.[6]

## A.     Facts

This case arises, primarily, from a dispute between Plaintiffs and the IRS regarding the Plaintiffs' tax liability for tax years 2014, 2015, and 2016.  Plaintiffs assert that the IRS's position is "uncertified[,] unsupported[, and] preposterous."  (AC at 5.)  In short, Plaintiffs contest their assessed tax liabilities for those years on the grounds that James did not hold a job until 2019 (and thus did not work from 2014-2016);[7] Kimberly has never held a job and "has been disabled for more than ten years"; and "John took an early retirement and had no income from 2014 through 2016."  (*Id.*)

While Plaintiffs assert that this dispute is only about tax years 2014, 2015, and 2016, their narrative starts with their dispute regarding John's tax year 2009 liability.[8]  In short, the IRS had

---

[5] The Court will send to Plaintiffs copies of all unpublished decisions cited in this Opinion and Order.

[6] Even considering the Initial Complaint, Amended Complaint, and Plaintiff's opposition brief together, it took considerable effort to understand the nature of Plaintiffs' claims and the facts underlying them.

[7] Plaintiffs attached to the Initial Complaint what appears to be James's tax year 2019 Form 1040 return, which reflects taxable income in the amount of $10,810.  (IC at 85.)  In their Amended Complaint, Plaintiffs assert that James earned $10,800 in 2019 and $18,700 in 2020 working as a cashier at a grocery store.  (AC at 5.)

[8] In 2014, Judge Vincent Briccetti of this Court dismissed as meritless claims – similar to those in this litigation – brought by Plaintiffs John and Kimberly Vidurek against the IRS for unauthorized tax collection regarding their taxes for 2008 and 2009.  *See Vidurek v. Miller*, No. 13-CV-4476, 2014 WL 901462 (S.D.N.Y. Feb. 27, 2014) (*Vidurek I*).  In 2018, Judge Briccetti dismissed "nearly identical" claims by Plaintiffs John and Kimberly Vidurek and, noting their history of filing "duplicative and meritless" claims, enjoined them from filing further cases related to their 2008 and 2009 tax liabilities absent court permission.  *Vidurek v. Koskinen*, No. 17-CV-9064, 2018 WL 3597644, at *13-14 (S.D.N.Y. July 25, 2018) (*Vidurek II*), *aff'd*, 789 F.

---

3

placed a $124,762.43 lien on John's property for unpaid taxes for tax year 2009, which the IRS

later released.  (IC at 27.)  On September 2, 2013, the IRS sent a new bill for tax year 2009 for

only $80.64.  (*Id.* at 28.)  Plaintiffs assert that this $80 bill, which John has disputed, has

escalated to the current amounts due.  (*Id.* at 9.)  This assertion is belied by the notices Plaintiffs

attached as exhibits to the Initial Complaint, which reflect that the $80.64 is for tax year 2009,

and the other disputed amounts – which form the actual bases for this dispute – are for tax years

2014, 2015, and 2016.  (*Id.* at 14-24, 28-29, 39-48.)[9]

According to Plaintiffs, since 2014 "ro[gu]e agents" have sent Plaintiffs "numerous IRS

form letters," claiming "absurd amounts" in tax liabilities.  (*Id.* at 9.)  Based on the

correspondence attached to the Initial Complaint, it appears that on October 30, 2018, each of the

three plaintiffs wrote in response to correspondence from IRS employee Defendant Jeanette

Willet dated October 16, 2018, which apparently included a roughly sixty-page examination

report.  (*Id.* at 35, 37-38.)[10]  The October 30 letters from the Plaintiffs disputed the assessment.

(*Id.*)

On June 19, 2019, the IRS sent a letter, signed by Defendant Susan Lamastro, informing

James Vidurek that the information he had submitted to the IRS did not justify a change to his

---

App'x 889, 895 (2d Cir. 2019) ("[Plaintiffs'] extensive litigation history meant that a filing injunction was the appropriate means of protecting the court and other parties from further harassment and expense.").  John Vidurek has filed several other cases in this district that have been dismissed for administrative reasons.  *See Vidurek v. Krajick*, No. 15-CV-2175 (S.D.N.Y.) (dismissed for plaintiff's failure to pay filing fee or complete request to proceed *in forma pauperis*); *Vidurek v. Koskinen*, No. 15-CV-2188 (S.D.N.Y.) (same); *Vidurek v. IRS*, No. 17-CV-7971 (S.D.N.Y.) (dismissed as duplicative of Case No. 17-CV-9064 and at plaintiff's request).

[9] Were this lawsuit actually about the $80 from 2009, it would be barred as to John and Kimberly Vidurek by the filing injunction entered in *Vidurek II*, 2018 WL 3597644, at *13-14, as there is no indication that those Plaintiffs obtained court permission to file the instant case.

[10] Plaintiffs' letters, but not the October 16 IRS correspondence and the report(s) to which the letters refer, are attached as exhibits to the Initial Complaint.

assessed liability for tax years 2014, 2015, and 2016.  (*Id.* at 32-33.)  The letter set out the process for James to challenge the determination further, notifying him that he could dispute the IRS's findings by filing a petition with the Tax Court, but that if he failed to timely do so, the IRS would close the case and send him a bill "as required by law."  (*Id.*)[11]  On June 27, 2019, James responded that certain enclosures referenced in the IRS letter were not included and asked the IRS to send a "certified Proof of Claim Affidavit Form 4490 . . . filed in the Federal District Court" so he could "understand and defend against your claim properly."  (*Id.* at 31.)  There is no evidence that James or any other Plaintiff sought administrative relief through the IRS or in Tax Court.

In October 2019, the IRS sent John Vidurek a "Notice of intent to seize (levy) your property or rights to property" in order to collect $81,259.24 owed for the 2014 tax year, (*id.* at 39), $96,267.30 owed for the 2015 tax year, (*id.* at 41), and $70,251.58 owed for the 2016 tax year, (*id.* at 43).  The letters warned that the IRS might seize John's property within 30 days if he did not call or make the payment.  Kimberly Vidurek and James Vidurek also received notices around the same time regarding the IRS's assessment of their 2014, 2015, and 2016 tax liability.[12]  This assessment was the result of an audit of each of the three Plaintiffs and included significant interest and penalties for failure to pay and failure to file.  (*See id.* at 15, 17, 40, 42, 55 (referencing audit of John Vidurek); *id.* at 20-21, 45, 52 (referencing audit of Kimberly Vidurek); *id.* at 24, 48, 54 (referencing audit of James Vidurek).)

---

[11] It is unclear whether the IRS sent similar correspondence to each Plaintiff.

[12] Notices sent to Kimberly around this time stated that she owed $81,415.22 for the 2014 tax year, (IC at 19), $96,451.67 for the 2015 tax year, (*id.* at 22), and $68,652.18 for the 2016 tax year, (*id.* at 23).  Notices sent to James stated that he owed identical amounts.  (*Id.* at 51, 53, 56.)

In response to these notices, Plaintiffs sent a letter to the IRS on November 30, 2019 asserting that they "had no clue" what the IRS was talking about, stating that they had "never" submitted tax forms for 2014-2016, and demanding that the IRS send copies of "'Certified Proof of Claim Affidavit Form[] 4490 Rev. 2-2005' that is to be filed in the Federal District Court by law." (*Id.* at 34.)  In what appears to be the same letter, Plaintiffs stated, "[W]e are in the US Supreme Court concerning a lawsuit against IRS agents therefore you should not be communicating to us,"[13] and closed by asking whether the IRS was "triple-dipping here on fraudulent billings[.]" (*Id.* at 36.)

On December 16, 2019, both James and Kimberly Vidurek were notified of the IRS's intent to levy their property for their unpaid 2014, 2015, and 2016 taxes.  (*Id.* at 59-66.)  These notices were sent separately to James and Kimberly but reflect identical amounts due as of December 16, 2019: $81,806.47 for tax year 2014, (*id.* at 62, 66), $97,339.70 for tax year 2015, (*id.* at 61, 65), and $69,303.23 for tax year 2016, (*id.* at 60, 64).  On December 26, 2019, John also received a form notice from the IRS, signed by Defendant Frank J. Chan, informing him that if he did not pay his outstanding balance for tax years 2014, 2015, and 2016 (in the amounts of $82,443.77, $98,944.10, and $72,263.34, respectively) he would be subject to potential enforcement action, including seizure of wages or property.  (*Id.* at 68-71.)

In response to these notices, on January 18 and 22, 2020, Plaintiffs each sent separate but substantively similar letters to the IRS asserting that the assessed balances owed were erroneous, directing the IRS to fill out Form 4490 "and attest to the proof of claim," further directing the IRS to fill out Form 56 "which is necessary for seizure," and stating that once they received

---

[13] It is not clear to what Supreme Court case Plaintiffs referred; a search of the Supreme Court docket revealed no cases in which any Plaintiff here is or was involved.

"these affidavits" they intended to "investigate the claims and send the necessary corrections to

your records to end this matter."  (*Id.* at 59, 63, 67.)

 The IRS responded to James on February 25, 2020, in what appears to be a form letter

signed by Defendant Bobbi S. Martin, notifying him that the IRS had received his

correspondence regarding his liability for tax year 2014 and intended to look into the matter

further.  (*Id.* at 49-50.)  On March 30, 2020, the IRS sent James notice that his overdue taxes had

been assigned to a private collection agency, CBE Group, Inc., (*id.* at 81-84), and on April 10,

2020, The CBE Group, Inc. sent James a collection letter regarding his outstanding $255,096.09

balance owed to the IRS – $83,227.18 in assessed tax, interest, and penalties for tax year 2014;

$100,082.90 in assessed tax, interest, and penalties for tax year 2015; $71,786.01 in assessed tax,

interest, and penalties for tax year 2016, (*id.* at 86-87).

**B.** **Procedural History**

 In April 2020, Plaintiffs sent the Federal Defendants, "IRS Inc.," and Pim Pollen,

Margareth de Wit, and Alessandro Donetti[14] a "Notice and Demand," issued by their self-

---

[14] Plaintiffs' "Notice and Demand," as well as the July 21, 2020 "Action at Law," (IC), named individuals who Plaintiffs claimed are officers of an entity known as "CBE Group" – Pim Pollen, Margareth de Wit, and Alessandro Donetti, (*see* IC at 3, 7).  These individuals were included in the captions of Plaintiffs' "Affidavit[s] of Default" dated September 10, 2020, (Docs. 7, 9), September 18, 2020, (Doc. 10), and October 13, 2020, (Doc. 11.)  Plaintiffs' October 31, 2020 "Action at Law" – which the Court construed as a motion for reconsideration and remand – changed the caption for the first time to omit Pollen, de Wit, and Donetti, and added as defendants, for the first time, the CBE Defendants.  (Doc. 12.)  Plaintiffs' subsequent filings have named the CBE Defendants, and omitted mention of Pollen, de Wit, and Donetti.  (*See* AC.)  In their March 3, 2021 Answer, the CBE Defendants explain that "Plaintiffs' Complaint incorrectly and defectively named individuals Pim Pollen, Margareth De Wit, and Alessandro Donetti of CBE Group, which is unrelated and in no way affiliated with The CBE Group, Inc." (Doc. 26 at 1.)  The CBE Defendants state that they were never served with the Amended Complaint, but filed an answer nonetheless "to avoid any prospect of default."  (*Id.*)  The Clerk of Court is respectfully directed to terminate Pollen, de Wit and Donetti as Defendants, and to add Steve Douglas, Mike Frost and Randall Kamm as Defendants.

proclaimed "Court of Record."  (*Id.* at 7.)  The "Notice and Demand" was "served" by mail.  (*Id.* at 100.)

        Plaintiffs' "Notice and Demand" states that the IRS must provide "proof of claim and fiduciary authority" and file an IRS "form 4490" in order to issue valid assessments.  (IC at 8-9; AC at 11.)  It further alleges that the IRS "terroriz[ed] John's wife and son" by serving Plaintiffs with "fictitious" notices that demanded "preposterous amounts" in federal taxes, and asserts that Defendants violated several federal criminal statutes:  the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1961-1968), seditious conspiracy (18 U.S.C. § 2384), conspiracy against rights (18 U.S.C. § 241), deprivation of rights under color of law (18 U.S.C. § 242), making false statements (18 U.S.C. § 1001), and mail fraud (18 U.S.C. § 1341).  (IC at 7-9, 12-13.)  Plaintiffs assert that the "Notice of Lien" filed by the IRS against Plaintiffs' property was a counterfeit security under 18 U.S.C. § 513(a).  (*Id.* at 13, 96-98.)  Plaintiffs also allege constitutional claims for due process violations pursuant to 42 U.S.C. § 1983 and for conspiracy to violate civil rights pursuant to 42 U.S.C. §§ 1985 and 1986.  (*Id.* at 13.)  Finally, Plaintiffs appear to bring state-law claims for usury, fraud, conspiracy, and "Barratry," "Maintenance," and "Champerty."  (*Id.* at 12.)

        On July 21, 2020, Plaintiffs initiated this action in New York Supreme Court, Dutchess County, by filing a Summons and "Action at Law," which incorporated their "Notice and Demand" and named the same Defendants who were named in the Notice and Demand.  (IC at 3; *see* note 14 above.)  Plaintiffs claim that Defendants "acquiesced" and "agreed to the monetary restitution and damages" set out in the "Notice and Demand" by failing to respond to that document.  (IC at 4; AC at 4.)  Plaintiffs assert that, instead of responding to their "Notice and Demand," the IRS "continued in their assault against the plaintiffs" by unlawfully seizing $813

from James Vidurek's 2019 tax refund.  (IC at 4.)  Plaintiffs' Initial Complaint seeks

reimbursement of their "seized monies," court fees, and time spent on legal research, as well as

damages of $3,000 from each Defendant for alleged constitutional due process and privacy

violations, and as compensation for "[t]errorizing" plaintiffs by causing stress.  (*Id.* at 4-5.)[15]

On August 20, 2020, the Federal Defendants timely removed to this Court.  (Doc. 1.)

Upon removal, the Federal Defendants failed to respond to the complaint within seven days of

removal as required by Rule 81(c)(2)(C) of the Federal Rules of Civil Procedure, instead filing

their pre-motion letter on September 11, 2020, and requesting that the Court excuse the untimely

submission.  (Doc. 4.)  Plaintiffs filed "Affidavit[s] of Default" in response to the Government's

late submission, (Docs. 7, 9, 10), and the Court ruled on the record at a conference on October 7,

2020, that default judgments were not appropriate given the circumstances, (*see* Minute Entry

dated Oct. 7, 2020).[16]  Plaintiffs subsequently submitted another "Action at Law," which the

Court deemed a motion to remand and a motion for reconsideration, and denied.  (Doc. 12.)[17]

---

[15] Plaintiffs seem to demand this $3000 to be paid in "face value Morgan Silver Dollars," which they allege were at the time worth $22.99 apiece, so their demand for $3000 in Morgan Silver Dollars appears to seek $68,970.  (IC at 5.)

[16] Rule 55 of the Federal Rules of Civil Procedure grants the Court discretion whether to enter a default or grant a default judgment, and in deciding whether to do so the Court considers "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *SG Equip. Fin. USA Corp. v. Nikitin*, No. 09-CV-7167, 2010 WL 743762, at *1 (S.D.N.Y. Mar. 2, 2010) (cleaned up).

[17] On November 9, 2020, Plaintiffs also filed an "Affidavit of Default" against the CBE Defendants, alleging that Plaintiffs had served defendants by mail on September 18, 2020.  (Doc. 13.)  In response to this filing, the Court advised Plaintiffs that "[a]ny party seeking a default judgment shall follow the procedure set forth in my Individual Practices.  In this case that shall include authority as to why service by mail should be regarded as acceptable under the Federal Rules of Civil Procedure."  (Doc. 14.)  Plaintiffs made no further application.

At the October 7, 2020 conference, the Court granted Plaintiffs leave to amend their

complaint.[18]  (Minute Entry dated Oct. 7, 2020.)  In response, Plaintiffs filed their Amended

Complaint (styled as an "Action at Law") on November 19, 2020.  (*See* AC.)

The Amended Complaint clarifies Plaintiffs' Section 1985 claim as one for intimidation

of jurors under 42 U.S.C. § 1985(2).  (AC at 6.)  Plaintiffs argue that the IRS has "target[ed]"

Plaintiffs because Plaintiff John Vidurek serves "on a Grand Jury investigating the IRS and other

agencies."  (*Id.*)  Plaintiffs also include numerous allegations that describe the distinction

between courts of law and equity and how Congress and the Supreme Court have acted

impermissibly by "[c]ombining [l]aw and equity."  (*Id.* at 7-10.)  Plaintiffs assert that the "IRS

has been unlawfully granted an extreme amount of power and operates with total

unaccountability."  (*Id.* at 10.)

On December 19, 2020, the Federal Defendants moved to dismiss, (Doc. 18), arguing that

sovereign immunity bars Plaintiffs' claims against Federal Defendants in their official capacities,

Plaintiffs never properly served the Federal Defendants, and Plaintiffs have failed to state any

claim on which relief can be granted, (Doc. 19 ("Ds' Mem.")).  Plaintiffs submitted another

"Action at Law," which the Court construes as their opposition brief,[19] on January 21, 2021,

---

[18] The Court advised Plaintiffs that they were not permitted to bring claims related to
their 2008 and 2009 tax liabilities – claims that Judge Briccetti dismissed and ultimately enjoined
in previous lawsuits, *see Vidurek I*, 2014 WL 901462; *Vidurek II*, 2018 WL 3597644, at *33 –
and that they needed to clarify what legal obligations they believed Defendants had violated.

[19] To the extent Plaintiffs' opposition brief raises new claims, including claims regarding
"fraud on the court" allegedly committed by this Court and counsel for the Federal Defendants in
connections with Defendants' alleged default, such claims are improperly pleaded and will not
be addressed in this opinion.  *See* Fed. R. Civ. P. 8(a); *Bernstein v. City of N.Y.*, No. 06-CV-895,
2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (finding in *pro se* case that "new claims not
specifically asserted in the complaint may not be considered by courts when deciding a motion to
dismiss") (cleaned up); *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-CV-675, 2014 WL
6982929, at *6 (S.D.N.Y. Dec. 10, 2014) ("Where a [*pro se*] plaintiff's motion papers assert

(Ps' Opp.), and the Federal Defendants submitted their reply memorandum on February 1, 2021,
(Doc. 24).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a district court may properly dismiss an
action for lack of subject matter jurisdiction "if the court lacks the statutory or constitutional
power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d
411, 416-17 (2d Cir. 2015) (cleaned up).  A claim of sovereign immunity is a challenge to a
court's subject matter jurisdiction.  *See Peker v. Steglich*, No. 06-CV-6910, 2007 WL 683796, at
*1 (S.D.N.Y. Mar. 5, 2007), *aff'd*, 324 F. App'x 38 (2d Cir. 2009) (summary order).  "A plaintiff
asserting subject matter jurisdiction has the burden of proving by a preponderance of the
evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In
determining whether subject matter jurisdiction exists, the district court "must take all facts
alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but
jurisdiction must be shown affirmatively, and that showing is not made by drawing from the
pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547
F.3d 167, 170 (2d Cir. 2008) (cleaned up), *aff'd*, 561 U.S. 247 (2010).  The Court may also "rely
on evidence outside the complaint" when deciding a Rule 12(b)(1) motion.  *Cortlandt St.
Recovery Corp.*, 790 F.3d at 417.

When a party moves to dismiss both for lack of subject matter jurisdiction and on other
grounds such as failure to state a claim upon which relief can be granted, the Court must address

---

entirely new claims that do not arise out of the facts alleged in the complaint, the court need not
consider them.").  Further, any such claims are frivolous.  (*See* note 16 above.)

the issue of subject matter jurisdiction first.  *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

**B.**      **Motion to Dismiss for Insufficient Service of Process**

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a case for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5).  "When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy."  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (cleaned up).

**C.**      **Motion to Dismiss for Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

> When deciding a motion to dismiss, a court is entitled to consider:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (cleaned up).

## D.     *Pro Se* Plaintiffs

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (cleaned up), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

III.   **DISCUSSION**

A.   **Jurisdiction**

The Court has original jurisdiction over Plaintiffs' Constitutional and federal statutory

claims under 28 U.S.C. § 1331.  *See Bankers' Tr. Co. v. Tex. & P. Ry. Co.*, 241 U.S. 295, 305

(1916) ("Under the Constitution Congress undoubtedly possesses power to invest the subordinate

Federal courts with original jurisdiction of all suits at law or in equity arising under the

Constitution, laws, or treaties of the United States.").  It has supplemental jurisdiction over

Plaintiffs' state-law claims under 28 U.S.C. § 1367.  *See United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 725 (1966) ("Pendent jurisdiction, in the sense of judicial power, exists whenever

there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties

made, or which shall be made, under their Authority * * *,' U.S. Const., Art. III, § 2, and the

relationship between that claim and the state claim permits the conclusion that the entire action

before the court comprises but one constitutional 'case.'") (alterations in original); *Artis v.

District of Columbia*, 138 S. Ct. 594, 597-98 (2018) (noting that "[t]he Supplemental Jurisdiction

statute, 28 U.S.C. § 1367, enables federal district courts to entertain claims not otherwise within

their adjudicatory authority when those claims are so related to claims within federal-court

competence that they form part of the same case or controversy" and that Section 1367 "codifies

the court-developed pendent and ancillary jurisdiction doctrines under the label 'supplemental

jurisdiction'") (cleaned up).  Further, even if there were no federal claims, the Court would have

jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), because – as will

be discussed below – a federal question is raised by the Federal Defendants' defense.  *See, e.g.*,

*Maguire v. A.C. & S., Inc.*, 73 F. Supp. 3d 323, 327 (S.D.N.Y. 2014).

**B.** <u>**Motion to Dismiss for Lack of Subject Matter Jurisdiction**</u>

The Federal Defendants argue that sovereign immunity bars all of Plaintiffs' claims against the Federal Defendants in their official capacities and that no waiver of that immunity applies.  (*See* Ds' Mem. at 9-12.)

"It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'"  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).  Accordingly, in a suit against the United States, "a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction."  *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 374 (2d Cir. 1999) (*per curiam*).  "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."  *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see Mitchell*, 463 U.S. at 212.  "Absent an 'unequivocally expressed' statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity."  *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999)).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs bear the burden of showing that Congress waived sovereign immunity with respect to their claims.  *Makarova*, 201 F.3d at 113.  Any ambiguity regarding the government's consent to be sued is "construed strictly in favor of the sovereign."  *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992) (cleaned up); *see Sebelius*, 605 F.3d at 140.

1.      **The Internal Revenue Code**

Plaintiffs have not shown that their claims against the individual Federal Defendants, which exclusively relate to tax assessment and collection, fall within any applicable waiver of sovereign immunity within the Internal Revenue Code.  *See Perry v. Wright*, No. 12-CV-721, 2013 WL 950921, at *4 (S.D.N.Y. Mar. 8, 2013) (summarizing provisions that allow taxpayers to file suit in federal court and requirements for waiver of sovereign immunity for each).  While Sections 6213, 7422, and 7433 of the Internal Revenue Code provide sovereign-immunity waivers in certain contexts, none is applicable here.  *Id.*

First, under Section 6213 of the Internal Revenue Code, a taxpayer may appeal a deficiency determination to the Tax Court, but only the Court of Appeals has jurisdiction to review Tax Court decisions.  26 U.S.C. §§ 6213(a), 7482.  Plaintiffs do not claim to have filed either a Tax Court case or such an appeal.  There is no provision for challenging tax assessments via a state-court lawsuit.

Second, Section 7422 of the Internal Revenue Code permits a taxpayer to pay a penalty and then sue in district court for a refund, provided the taxpayer has first filed an administrative claim for a refund.  26 U.S.C. § 7422(a); *Roberts v. Internal Revenue Serv.*, 468 F. Supp. 2d 644, 649-50 (S.D.N.Y. 2006).  This section in inapplicable as Plaintiffs have refused to pay the assessed taxes for tax years 2014, 2015, or 2016.  (*See, e.g.*, IC at 34.)

Third, Section 7433(a) of the Internal Revenue Code waives sovereign immunity where, "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title."  26 U.S.C. § 7433(a).  But such a claim requires a plaintiff to exhaust the administrative remedies available

within the IRS before an action.  *See* 26 U.S.C. § 7433(d)(1); *Vidurek II*, 789 F. App'x 889, 893 (2d Cir. 2019).  Plaintiffs do not claim to have exhausted their administrative remedies, and the exhibits to Plaintiffs' pleadings suggest that they have not done so, at least with regard to James's liability.  In June 2019, the IRS wrote to James, advising him of his right to challenge his assessment in Tax Court, but the record reflects that James's response was to request to see a "Proof of Claim" before he could "understand and defend against" the IRS's assessment.  (IC at 31.)  That Plaintiffs have not exhausted their administrative remedies is confirmed by the undisputed affidavit of James J. Doane, Sr., IRS Revenue Officer Advisor, stating that IRS records show that Plaintiffs have not filed any administrative claims for wrongful collection activity.  (*See* Doc. 20.)

Thus, Plaintiffs have not shown an applicable waiver of sovereign immunity under the Internal Revenue Code.  *See Perry*, 2013 WL 950921, at *4-5 ("Plaintiff pleads no facts about exhausting her administrative remedies.  Therefore, Plaintiff's claim does not satisfy the requirements of the waiver of sovereign immunity in section 7433.") (cleaned up).

### 2. The Federal Tort Claims Act ("FTCA")

To the extent Plaintiffs assert claims under the FTCA, the government's waiver of sovereign immunity under that statute is not applicable to "[a]ny claim arising in respect of the assessment or collection of any tax."  28 U.S.C. § 2680(c); *see Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477 (2d Cir. 1995) (affirming dismissal of tax-related tort claim on basis of sovereign immunity and 28 U.S.C. § 2680(c)); *see also Vidurek I*, 2014 WL 901462, at *5; *Vidurek II*, 2018 WL 3597644, at *7.  Thus, any tax-related claims under the FTCA are barred by sovereign immunity.

### 3.     The Administrative Procedure Act ("APA")

The APA likewise does not supply a waiver applicable to Plaintiffs' claims.  It provides that "[a] person suffering legal wrong because of agency action, or adversely affected . . . by agency action . . . is entitled to judicial review thereof," 5 U.S.C. § 702, but agency action is only reviewable under the APA when "no other adequate remedy in a court" exists, *id*. § 704.  Here, other adequate remedies were plainly available to Plaintiffs.  For example, the Plaintiffs could have requested a hearing challenging Plaintiffs' underlying tax liability under 26 U.S.C. § 6330(b), (c)(2)(B), which carries a right to appeal adverse determinations to the United States Tax Court, 26 U.S.C. § 6330(d), and then the Court of Appeals, 26 U.S.C. § 7482.  Because such a procedure was available to Plaintiffs, the APA does not provide a waiver of sovereign immunity with respect to their claims.  *See Perry*, 2013 WL 950921, at *5; *Vidurek I*, 2014 WL 901462, at *5; *Vidurek II*, 2018 WL 3597644, at *7.

Thus, Plaintiffs' claims against the Federal Defendants in their official capacities are dismissed on grounds of sovereign immunity.

### C.    <u>Insufficient Service of Process</u>

The Federal Defendants argue that they were never properly served under Rule 4.  "To serve an employee of the United States sued in an individual capacity for a cause of action arising from the employee's duties performed for the United States, 'a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).'"  *Vidurek II*, 2018 WL 3597644, at *8 (quoting Fed. R. Civ. P. 4(i)(3)).[20]  Plaintiffs have not demonstrated

---

[20] Rules 4(f) and 4(g) are inapplicable here because they refer to service on individuals in foreign countries, or on minors or incompetent persons, respectively.

that they have served the United States as required under Fed. R. Civ. P. 4(i)(1).  Nor have they

shown that they have properly served the individual Federal Defendants.

Rule 4(e)(2) provides that a summons is properly served where it is delivered in person;

delivered to the individual's dwelling and left with someone of suitable age and discretion;

delivered to an authorized agent; or served in accordance with state law in the state where the

district court is located or where service is made.  Fed. R. Civ. P. 4(e).  Plaintiffs' certificate of

service shows that they attempted service only "by mailing a true copy of the attached papers,

enclosed and properly sealed in a postpaid envelope, which [was] deposited in an official

depository under the exclusive care and custody of the United States Postal Services within the

State of New York."  (IC at 104.)  The documents were mailed to P.O. Boxes and IRS business

addresses.  (*Id.*)  This is insufficient under Rule 4(e)(2).

The alternative to Rule 4(e)(2) provides that service can be made by following state law

in the state where the district court is located or where service is made.  Fed. R. Civ. P. 4(e)(1).

Plaintiffs attempted service upon the Federal Defendants in New York, Utah, Pennsylvania,

California, and Washington, D.C., (*see* IC at 104), but failed to follow the relevant local laws

governing service.  *See* N.Y. C.P.L.R. 308, 312-a(a) (McKinney 2021) (allowing service by mail

only if summons is also (1) delivered in person "within the state to a person of suitable age and

discretion at [defendant's] actual place of business, dwelling place or usual place of abode";

(2) accompanied by "two copies of a statement of service by mail and acknowledgement of

receipt"; or, (3) where other methods not possible with due diligence, affixed to door); Utah R.

Civ. P. 4(d)(2) (service by mail permissible only if defendant signs a document indicating

receipt); Cal. Civ. Proc. Code §§ 415.20, 415.30 (West 2021) (service by mail within California

must be by prepaid first-class mail or air mail with notice and acknowledgment of service, or

must be accompanied by leaving a copy at defendant's usual residence, place of business, or mailing address); Pa. R. Civ. P. 400, 402 (service within the Commonwealth must be by hand delivery); D.C. Super. Ct. R. Civ. P. 4(c)(4), (5) (service by mail must be by registered or certified mail with return receipt requested, or by first-class mail with notice and acknowledgment of service); *see also Vidurek II*, 2018 WL 3597644, at *8-9 (concluding that plaintiffs' similar efforts to serve defendants were insufficient under federal, New York and Utah law).

The Court declines to grant leave for Plaintiffs to cure these errors in service of process. Absent a "colorable excuse for neglect," a district court may dismiss an action for lack of proper service. *See Vidurek II*, 789 F. App'x at 893. Particularly in light of the notice Plaintiffs have had regarding proper service in prior cases before this Court, *see Vidurek II*, 2018 WL 3597644, at *8-9, and in this case, (*see* Doc. 14), Plaintiffs have no such excuse. Accordingly, the Court lacks personal jurisdiction over the individual Federal Defendants, and the claims against them in their individual capacities must be dismissed.

**D.**    **Failure to State a Claim**

Plaintiffs' federal claims against the Federal Defendants also fail because they do not state claims upon which relief can be granted.

**1.**    **Constitutional Claims**

The Court construes Plaintiffs' Section 1983 claims against the Federal Defendants as *Bivens* claims. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *see also Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) (*per curiam*) (construing Section 1983 claim by *pro se* plaintiff as *Bivens* claim against federal defendants); *Vidurek I*,

2014 WL 901462, at *7 n.12 (same); *accord United States v. Acosta*, 502 F.3d 54, 60 (2d Cir.

2007) ("Section 1983, of course, does not apply to allegedly unlawful acts of federal officers.").

Under *Bivens*, "alleged victims of constitutional violations by federal officials may

recover damages despite the absence of any statute specifically conferring such a cause of

action." *Robinson*, 21 F.3d at 510.  The Supreme Court has constricted the doctrine to limit

recovery to cases involving unlawful arrest and search, workplace sex discrimination, and failure

to provide adequate medical care to an individual in federal prison.  *Hernandez v. Mesa*, 140 S.

Ct. 735, 741 (2020).  Expansion of the *Bivens* remedy beyond these categories is a "disfavored

judicial activity," and the Supreme Court has "for almost 40 years . . . rebuffed requests to add to

the claims allowed under *Bivens*."  *Id.* at 742-43 (cleaned up); *see Ziglar v. Abbasi*, 137 S. Ct.

1843, 1857 (2017).  Courts that are asked to expand *Bivens* must look at (1) whether "the case is

different in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court"; and

(2) whether there are "any special factors" that "counsel[] hesitation" in extending *Bivens*,

including "sound reasons to think Congress might doubt the efficacy or necessity of a damages

remedy."  *Ziglar*, 137 S. Ct. at 1858-60.

The context and defendants at issue here clearly differ in a meaningful way from the

cases in which the Supreme Court has endorsed *Bivens* actions.  *See id.* at 1860 (enumerating the

three *Bivens* claims previously approved by the Supreme Court:  "a claim against FBI agents for

handcuffing a man in his own home without a warrant; a claim against a Congressman for firing

his female secretary; and a claim against prison officials for failure to treat an inmate's asthma").

Moreover, there are sound reasons to think that Congress "might doubt the efficacy or

necessity of a damages remedy."  *Id.* at 1858.  As the Second Circuit has observed, "it would be

difficult to conceive of a more comprehensive statutory scheme, or one that has received more

intense scrutiny from Congress, than the Internal Revenue Code." *Hudson Valley Black Press v. Internal Revenue Serv.*, 409 F.3d 106, 113 (2d Cir. 2005) (cleaned up); *see Canada v. United States*, 950 F.3d 299, 310-11 (5th Cir. 2020) (citing "(1) the risk of disruptive intrusion by the courts into the executive tax collection efforts; (2) the alternative remedies available; and (3) Congress' repeated failure to enact a damages remedy" as factors counseling against extending *Bivens* to the tax-collection context). "Because of the complex remedial scheme that Congress has created, and the plain indication that the failure of Congress to provide a remedy for injuries arising from tax assessment was not inadvertent, every circuit that has considered the appropriateness of a *Bivens* remedy in the taxation context has uniformly declined to permit one." *Hudson Valley Black Press*, 409 F.3d at 113 (collecting cases). Thus, "a *Bivens* action is not available against IRS officials to challenge tax collection and assessment." *Perry*, 2013 WL 950921, at *8.

### 2.    Criminal Claims

Plaintiffs allege violations of several federal criminal statutes, including 18 U.S.C. §§ 1961-68 (RICO); 18 U.S.C. § 2384 (seditious conspiracy); 18 U.S.C. § 241 (conspiracy against rights); 18 U.S.C. § 242 (deprivation of rights under color of law); 18 U.S.C. § 1001 (making false statements); 18 U.S.C. § 1341 (mail fraud); and 18 U.S.C. § 513 (counterfeit securities). As a general matter, "crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006) (summary order). Where Congress has not explicitly provided for a private right of action under a criminal statute, the Supreme Court has rarely implied one. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). Therefore, with the exception of RICO (addressed below), Plaintiffs cannot bring claims under the criminal statutes they cite because these statutes do not provide for private rights of action. *See, e.g., Ojeda v.*

*Mendez*, No. 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (no private right of

action for seditious conspiracy); *Bender v. Gen. Servs. Admin.*, No. 05-CV-6459, 2006 WL

988241, at *1 (S.D.N.Y. Apr. 14, 2006) (no private right of action for conspiracy against civil

rights, deprivation of civil rights under color of law, or false statements); *Caron v. TD*

*Ameritrade*, No. 19-CV-9015, 2020 WL 7027593, at *3 (S.D.N.Y. Nov. 30, 2020) (no private

right of action under 18 U.S.C § 1001); *Wright v. Waterside Plaza LLC*, No. 07-CV-9303, 2008

WL 872281, at *2 (S.D.N.Y. Apr. 2, 2008) (no private right of action for mail fraud); *In Re Lau*,

684 F. App'x 235, 236-37 (3d Cir. 2017) (*per curiam*) (no private right of action for forged

securities).

    Nor have Plaintiffs provided authority supporting any implied private rights of action

under these statutes, and the Court is aware of none. *See Zahl v. Kosovsky*, No. 08-CV-8308,

2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) ("[I]n determining whether a criminal statute

implies a private right of action 'the "dispositive question" is whether Congress intended to

create a private right of action,' and courts 'are to be "especially reluctant" to imply a private

right of action where the statute explicitly provides a different remedy.'") (quoting *Alaji*

*Salahuddin v. Alaji*, 232 F.3d 305, 308 (2d Cir. 2000)); *Daniel v. Safir*, 135 F. Supp. 2d 367, 376

(E.D.N.Y. 2001) ("[U]nless specifically provided for, federal criminal statutes rarely create

private rights of action."). The Court declines to infer such rights.

    **3.    RICO**

    In contrast with the criminal statutes discussed above, Congress has created a private

right of action under RICO. *See* 18 U.S.C. § 1964(c). Nevertheless, Plaintiffs have not plausibly

pleaded a civil RICO claim. RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a
pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to state a RICO claim under Section 1962(c), a plaintiff must plead

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima v.

Imrex Co.*, 473 U.S. 479, 496 (1985) (cleaned up).

"A RICO enterprise may be a lawful entity or an association-in-fact."  *Kalimantano

GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013).  As in Plaintiffs' past

litigation against various IRS agents and officers of financial institutions, *see Vidurek I*, 2014

WL 901462, at *7; *Vidurek II*, 2018 WL 3597644, at *10, Plaintiffs have failed to state a claim

under RICO because they have not plausibly alleged an enterprise, let alone that any Defendant

conducted the affairs of that enterprise through a pattern of racketeering.

Plaintiffs do not identify any enterprise, but they appear to allege an "association-in-fact"

enterprise consisting of the various named defendants.  To establish such an enterprise, Plaintiffs

must show that "the individuals . . . share a common purpose to engage in a particular fraudulent

course of conduct and work together to achieve such purposes" and "explain each participant's

role in the alleged course of fraudulent or illegal conduct" to show the enterprise members

"functioned as a unit."  *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir.

2004) (cleaned up).

Here, the complaint lacks specific allegations about the roles of the Federal Defendants in

the allegedly fraudulent tax assessment and subsequent efforts to collect.  Plaintiffs' RICO

allegations state simply that a series of named and unnamed IRS employees who sent letters and

notices to Plaintiffs regarding their tax liability – the majority of which laid out the

administrative steps Plaintiffs could take to challenge the liabilities – "remained silent" in

response to Plaintiffs' affidavits and "escalated the case to the next intimidating step."  (IC 9-10.)

The only allegations regarding the CBE Defendants' involvement state are similarly conclusory, referring to the IRS's March 30, 2019 letter "informing James that the fraudulent absurd debt is being unlawfully transferred from one private collection agency (IRS, Inc.) to another," (*id.* at 10-11), and stating that the IRS has passed "unlawful debt" to CBE "to pick up the Maintenance of the original unlawful act of bribery (*pay us or we will destroy your life*)," (*id.* at 12) (emphasis in original).

Plaintiffs' "conclusory naming" of a list of entities and individuals does not plausibly allege an enterprise. *First Cap. Asset Mgmt.*, 385 F.3d at 175 (cleaned up); *see Vidurek I*, 2014 WL 901462, at *7; *Vidurek II*, 2018 WL 3597644, at *11. Moreover, Plaintiffs specify no acts of racketeering other than mail fraud, *compare* IC at 9-13, *with* 18 U.S.C. § 1961(1), and have made no effort to plead facts meeting the elements of that crime or to explain how any Defendant might be responsible for it. Accordingly, Plaintiffs' substantive RICO claim is dismissed.

To the extent Plaintiffs seek to state a claim for conspiracy to violate RICO, they fail. Where a plaintiff has failed to state a substantive RICO claim, any conspiracy claim based on the same facts necessarily fails as well. *First Cap. Asset Mgmt.*, 385 F.3d at 182. Plaintiffs' RICO conspiracy claim is therefore dismissed.

### 4.    Conspiracy Under 42 U.S.C. §§ 1985 and 1986

Plaintiffs claim that Defendants are liable for intimidating a juror in violation of Section 1985(2), which provides a cause of action where two or more parties have conspired to "influence the verdict, presentment, or indictment of any grand or petit juror" in "any court of the United States." 42 U.S.C. § 1985(2). "[C]ourt of the United States" refers exclusively to federal courts. *See* 28 U.S.C. § 451; *see also McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1035 n.2 (11th Cir. 2000) ("[T]he phrase 'court of the United States' in § 1985(2) refers only to

Article III courts and certain federal courts created by act of Congress, but not to state courts.").

Plaintiffs claim that "John is serving on a Grand Jury investigating the IRS and other agencies

and therefore John and now his family have become targets." (AC at 6.) Plaintiffs' pleadings

suggest that this "grand jury" is the "Unified United States Common Law Grand Jury," (IC at

90-101), an organization that is unaffiliated with any federal (or even state) court. *See* Decision

and Order, *Grand Jury, Sovereigns of the Court v. U.S. Congress*, No. 16-CV-1490 (N.D.N.Y.

June 14, 2017), ECF No. 27 ("Plaintiff describes itself as an organization composed of thousands

of members across the United States."). Because Plaintiffs have not alleged John is serving as a

grand or petit juror in a "court of the United States," Section 1985(2) is inapplicable.

Because a Section 1986 claim is "contingent on a valid § 1985 claim," all claims brought

under Section 1986 also fail. *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). Therefore

Plaintiffs have failed to state a claim under Sections 1985 and 1986.

### 5. Other Claims

To the extent that Plaintiffs purport to assert additional claims not discussed above, the

Court finds the pleadings to be not only inadequate to survive Rule 12(b)(6) but also frivolous.

Among other, similar, grievances, Plaintiffs incorporate into their Initial Complaint claims that

the IRS has no constitutional authority to "enforce a slave tax and imprison sovereign People"

and that the "income tax is a direct tax forbidden under the Constitution." (IC at 89, 99.)

Plaintiffs assert that they are not subject to the IRS's assessment and collection of Plaintiffs'

outstanding federal income tax liabilities because the IRS has "no enforcement authority" over

Plaintiffs; that the Internal Revenue Code applies to "[c]ommercial [a]ctivities on fuels, alcohol,

tobacco products, and firearms, not a tax on salaries," (*id.* at 91-95); that the "tax code" is

"unconstitutional" and "fraudulent," (*id.* at 13); and that "[t]he IRS has been unlawfully granted

an extreme amount of power and operates with total unaccountability," (AC at 10).  Plaintiffs'

theories have been specifically, repeatedly, and emphatically rejected by courts.  *See*, *e.g.*, *United*

*States v. Schiff*, 876 F.2d 272, 275 (2d Cir. 1989) ("[T]he average citizen knows that the payment

of income taxes is legally required."); *Connor v. C.I.R.*, 770 F.2d 17, 20 (2d Cir. 1985) ("Wages

are income.  The argument that they are not has been rejected so frequently that the very raising

of it justifies the imposition of sanctions.") (cleaned up).

     "Complaints which ramble, which needlessly speculate, accuse, and condemn, and which

contain circuitous diatribes" do not comport with basic pleading requirements and "must be

dismissed."  *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); *accord Prezzi v. Schelter*,

469 F.2d 691, 692 (2d Cir. 1972) (*per curiam*) (affirming dismissal of complaint that "contained

a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension").

     Thus, to the extent Plaintiffs intended to bring other claims against the Federal

Defendants, they are dismissed.

**E.**    **Plaintiffs' Claims Against CBE Group**

     The Court has the inherent authority to dismiss frivolous claims *sua sponte*, even when

the plaintiff is not proceeding *in forma pauperis*.  *See Fitzgerald v. First E. Seventh St. Tenants*

*Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) ("[D]istrict courts may dismiss a

frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.").

     A claim is "frivolous when either:  (1) the factual contentions are clearly baseless, such as

when allegations are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (cleaned up).  Even construing Plaintiffs' *pro se* pleadings liberally, *Harris v.*

*Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpreting them to raise the "strongest [claims] that

they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (*per curiam*), Plaintiffs' federal claims against the CBE Defendants are factually baseless and without legal merit.  Plaintiffs' allegation regarding The CBE Group, Inc. is that it sent a letter to James saying it had been retained to collect his debt to the IRS.  There are no facts rendering it plausible that that action amounted to racketeering, a violation of constitutional rights, or interference with a federal juror.  There are no factual allegations at all regarding any of the individual CBE Defendants.  Accordingly, the Court dismisses Plaintiffs' federal claims against the CBE Defendants *sua sponte*.  The Court recognizes that "[*s*]*ua sponte* dismissal of a *pro se* complaint . . . is a draconian device, which is warranted only when the complaint lacks an arguable basis either in law or in fact," *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (cleaned up), but that is the case here.

To the extent there remain state law claims against the CBE Defendants, the Court declines to exercise supplemental jurisdiction and dismisses those claims without prejudice.  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over any of Plaintiffs' potential remaining state law causes of action.  *See id*. (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

F.    <u>**Leave to Amend**</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though

liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by

amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v.*

*City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962)).  "Amendment is futile when the problem with a plaintiff's causes of action is

substantive and better pleading will not cure it."  *Trombetta v. Novocin*, 414 F. Supp. 3d 625,

634 (S.D.N.Y. 2019) (cleaned up).

Plaintiffs have already had the chance to amend their complaint, after having the benefit

of the Federal Defendants' pre-motion letter and the Court's comments at the pre-motion

conference.  (*See* AC; Minute Entry dated Oct. 7, 2020.)  In general, a plaintiff's failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,

898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his

complaint when he first amended, he clearly has no right to a second amendment even if the

proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy

district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.")

(cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y.

2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the

defects in their complaints, including a procedure through which the plaintiffs were provided

notice of defects in the Consolidated Amended Complaint by the defendants and given a chance

to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, as to the Federal Defendants, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant Plaintiffs leave to amend their complaint as to the Federal Defendants.

Although the Court finds the claims against the CBE Defendants to be frivolous, and thus the Court could dismiss them with prejudice,[21] Plaintiffs have not had the opportunity to amend

---

[21] The Court may dismiss frivolous claims without leave to amend:

Although a court ordinarily should not dismiss a *pro se* complaint without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated, a court does have inherent power to dismiss without leave to amend or replead where the substance of the claim pleaded is frivolous on its face, or where amendment would otherwise be futile.

*Stevens v. J&F Gourmet Deli*, No. 19-CV-7445, 2019 WL 6051560, at *2 (S.D.N.Y. Nov. 13, 2019) (cleaned up).

as to them.  Accordingly, the dismissal of the claims against those Defendants is without

prejudice.  Should Plaintiffs be in possession of facts that could cure the deficiencies identified in

this opinion, they may make a motion to amend, attaching a proposed Second Amended

Complaint against the CBE Defendants only, within three weeks of the date of this opinion – that

is, by September 28, 2021.  Should Plaintiffs make such a motion, the Court will set a briefing

schedule.  Should they fail to do so, the Court will dismiss the federal claims against the CBE

Defendants with prejudice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Federal Defendants' motion to dismiss the complaint is

GRANTED and the claims against them are DISMISSED with prejudice.  Plaintiffs' federal

claims against the CBE Defendants are DISMISSED without prejudice, although the dismissal

will be converted to one with prejudice if no motion to amend is made by September 28, 2021,

and their state claims against the CBE Defendants are dismissed without prejudice.  The Clerk of

Court is respectfully directed to amend the caption as set forth in footnote 14, terminate the

pending motion, (Doc. 18), and send a copy of this Opinion and Order to Plaintiffs.

**SO ORDERED.**

Dated:  September 7, 2021
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.